**US DISTRICT COURT OF THE STATE OF**

**NEW JERSEY, TRENTON**

-------------------------------------------------------------------------X

ASHU SHUKLA,                                                          **Index No.:**

               Plaintiff,

               -against-                                    **<u>SUMMONS</u>**

DELOITTE CONSULTING LLP,

ATTORNEY GENERAL OF THE UNITED STATES,

US ATTORNEY FOR NEW JERSEY,

DIRECTOR, FEDERAL BUREAU OF INVESTIGATIONS (FBI)

               Defendant.

-------------------------------------------------------------------------X

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff within twenty one (21) days after the service of this Summons, exclusive of the date of service; and in the case of your failure to appear or answer, judgment will be taken against by default for the relief demanded in this complaint.

Dated:  July 22nd, 2020, PRINCETON, NJ

**Yours,**
Ashu Shukla
_s_ashu shukla
Plaintiff
202 Salem CT, Apt#11
Princeton, NJ 08540
ashu.shukla@gmail.com
T # 917-488-6143

TO:

DELOITTE CONSULTING, LLP
30 Rockefeller Plaza
New York, NY 10112


ATTORNEY GENERAL OF THE UNITED STATES,
William Barr, in his official capacity, as well as his successors and assigns,
U.S Department of Justice,
950 Pennsylvania Avenue, N.W.,
Washington, DC 20530


US ATTORNEY FOR THE TRENTON, NEW JERSEY
402 E State Street,
Room 430,
Trenton, N.J. 08608


FEDERAL BUREAU OF INVESTIGATIONS,
Christopher Wray, Director, in his official capacity, as well as his successors and assigns,
J. Edgar Hoover Building,
935 Pennsylvania Avenue N.W.,
Washington DC 20535

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

ASHU SHUKLA,                                                                                      **Index No.:**

                    Plaintiff,

                    -against-                                                                    <u>**COMPLAINT**</u>

DELOITTE CONSULTING LLP,

ATTORNEY GENERAL OF THE UNITED STATES,

US ATTORNEY FOR NEW JERSEY,

DIRECTOR, FEDERAL BUREAU OF INVESTIGATIONS (FBI)

                    Defendant.

-------------------------------------------------------------------------X

Plaintiff, ASHU SHUKLA (hereinafter "Plaintiff"), as and for his Complaint against defendant DELOITTE CONSULTING LLP, ATTORNEY GENERAL OF THE UNITED STATES, US ATTORNEY FOR NEW JERSEY, FEDERAL BUREAU OF INVESTIGATIONS (FBI) ("Defendant"), alleges as follows:

<u>**JURISDICTION AND VENUE**</u>

1.  This Court has subject matter jurisdiction of the claims that arise under US Federal laws and New Jersey laws.

2.  Venue is proper because at least one of the parties resides in Mercer Country, New Jersey

3. Plaintiff ASHU SHUKLA is a resident of New Jersey and a former employee of the Defendant.

4. Defendant DELOITTE CONSULTING, LLP, is a Delaware Partnership with its principal place of business located at 30 Rockefeller Plaza, New York, NY 10112.

5. The Federal Court of New Jersey has jurisdiction over this matter because Plaintiff resides in Mercer Country which is a part of this district per 28 U.S.C. § 1391(e)(1). Venue also properly lies in the US District Court of The State of New Jersey, Mercer County, because a substantial part of the events or omissions giving rise to this action occurred in the district. Id. § 1391(b).

6. The Federal Court of New Jersey has subject matter jurisdiction, supplemental jurisdiction as well as remedial authority over this case pursuant to the various federal civil right laws, federal statutes, state law violations and common law torts.

7. This is a civil action seeking monetary relief, compensatory damages, injunctive relief, disbursements, costs and fees for violations of Plaintiff's rights resulting from events after his wrongful termination of employment with the defendant, Deloitte Consulting LLP, violation of U.S. Federal laws, New Jersey State employment laws, and retaliation.

8. Specifically, Plaintiff alleges that Defendant intentionally, recklessly, and knowingly sought to maintain an illegal control of his federal and state civil and constitution rights, his personal liberty, his life, health, personal wellbeing, employment opportunities and willfully harassed him. Plaintiff alleges that Defendant purposefully and intentionally, violated plaintiff's civil and constitutional rights and committed other wrongful acts after his termination of employment.

9. The alleged acts against Plaintiff were done knowingly, purposely, and with all intentions of depriving him of his right to be free of harassment, discrimination and retaliation after his employment with the defendant.

## PARTIES AND RELEVANT INDIVIDUALS

10. Plaintiff, ASHU SHUKLA, is a former employee of Defendant DELOITTE CONSULTING, LLP, ("Defendant").

11. Defendant, DELOITTE CONSULTING LLP, is a professional services firm that provides consulting services to a wide range of clients.

12. The parent company of Deloitte Consulting LLP is Deloitte LLP. Deloitte LLP employs over 287,000 employees globally. Upon information & belief, in 2019, Deloitte LLP had total revenues of over $43,000,000,000 (Forty-three Billion USD)

13. Defendant is subject to Federal laws and State laws of the State of New Jersey.

## FACTS

### Defendant's use of False, Fraudulent and Misleading Persons and Identities for Harassment

14. Plaintiff ASHU SHUKLA is a 35-year old male of Indian national heritage who suffers from serious allergies which cause anaphylactic reactions and disability when triggered.

15. Plaintiff was awarded a Bachelor's degree in Electronics and Telecommunication Engineering in 2006 from India, and a Master's degree in Information Systems in 2010 from New York University – Courant School of Mathematics and Stern School of Business. Using this education, Plaintiff has amassed over 10 years of experience in the Technology Consulting Industry.

16. Approximately 9 years into his consulting career, in October, 2016, Plaintiff was offered a position as Senior Consultant at the defendant, Deloitte Consulting LLP's, New York office.

After accepting the offer and clearing various background checks, the Plaintiff commenced working in December, 2016.

17. As employee for Defendant, Plaintiff enjoyed success in managing and delivering several projects where he helped the Defendant and Defendant's clients develop and implement solutions and improvements to their businesses. He was praised for his work both by Defendant's leadership and by Defendant's clients. In 2017, the Plaintiff was also honored with the Deloitte US Consulting Business Solution Award after winning a cross Deloitte Consumer & Industrial Products (C&IP) practice solution competition Honors award on Consumer Product ideation challenge.

18. During the course of his employment, plaintiff suffered a life-threatening anaphylactic reaction. Over the course of next several months, various defendant employees mocked and harassed him on the basis of his disability, gender, national origin and race. Plaintiff was intentionally given a poor performance (a non-discriminatory reason), and was terminated from his employment on November 5th 2018.

19. After plaintiff's termination, plaintiff was offered to use defendant Deloitte Consulting LLP's career transition services. While using defendant's career services, Plaintiff witnessed massive recruitment fraud, which was primarily orchestrated by defendant to harass the plaintiff based on his national origin, race and visa-based work permit limitations. On February 1st 2019, Plaintiff filed a wrongful termination lawsuit in the New York Supreme Court, with the help of an attorney. During the course of next months, defendant's interference and harassment on plaintiff's day to day life activities increased.

20. In July 2019, plaintiff learned from the defendant attorneys that during the course of plaintiff's employment at defendant Deloitte Consulting LLP, an elderly woman employee, approximately twice the age of plaintiff, falsely and maliciously complained of plaintiff getting drunk and inadvertently touching her behind. These allegations were never mentioned to the plaintiff during the course of his employment, and as a matter of fact, defendant failed in following their own process and protocols by not informing or interviewing the accused (plaintiff) on the case. In early August 2019, plaintiff terminated his attorney, and decided to

self-represent himself. In November 2019, plaintiff's employment lawsuit was moved to Southern District of New York (SDNY), Federal Court.

21. In his employment lawsuit, plaintiff has claimed discrimination, retaliation and hostile work environment due to his disability / medical condition, gender, national origin and race. Plaintiff's employment lawsuit is currently pending in SDNY case# 1:19-cv-10578-AJN. The facts presented below highlight the unlawful and illegal harassment activities by the defendant, Deloitte Consulting LLP, after plaintiff's termination.

## Recruitment Fraud and Unlawful Activities

22. After termination, plaintiff applied to various jobs through Deloitte Marketplace website. Upon information and belief, Deloitte selectively released plaintiff's resume to firms like McKesson, Kohls, Vanguard etc. where plaintiff was destined not to be hired to jobs because they did not offer visa-sponsored employment for those specific positions. Thus, defendant conspired against and prevented Plaintiff from seeking alternate private sector visa-sponsored employment, thereby, further harassing and retaliating against the plaintiff based on his national origin and visa condition. Plaintiff was treated differently than similarly situated Deloitte employees who successfully used Deloitte transition services and got recruited.

23. Similarly, plaintiff applied through the Deloitte transition services marketplace website which did offer visa sponsored employment. Upon information & belief, Deloitte transition services coach, Aileen Baxter, coordinated with these potential future employers like Dr. Keurig Pepper, Microsoft, State Street etc., to make sure that the plaintiff could not get selected. Thus, defendant conspired against and prevented Plaintiff from seeking alternate private sector visa-sponsored employment, thereby, further harassing and retaliating against the plaintiff based on his national origin and visa condition. Plaintiff was treated differently than similarly situated Deloitte employees who successfully used Deloitte transition services and got recruited.

24. Before filing his lawsuit, plaintiff applied for a Director, Commercial Effectiveness position at Pharmaceutical firm GlaxoSmithKline (GSK).  On February 18th 2019, the Human

7

Resource Manager of GSK invited the plaintiff for an interview for this position. On February 22nd 2019, the plaintiff held an interview with a Senior Director within GSK for his role, the interviewer really liked plaintiff's profile and said that plaintiff would hear back from the recruiter next week. Upon information & belief, the miscreates from defendant, Deloitte Consulting LLP, gained access to plaintiff's emails and phone conversation by illegal means, reached out the GSK recruiter, Kim Saintz, and disrupted plaintiff's progress by stalling his interviews at the Equal Opportunity Employer GSK. Plaintiff's progress is evident because the recruiter invited the plaintiff for the next round of the interview, however, knowingly did not schedule it.

25. Similarly, in late 2019, plaintiff applied to a position at Apple and his profile got selected. Apple's recruiter, Caitie Wojdak, really liked plaintiff's profile and reached out to the plaintiff both over email and phone for various roles in their AI/machine learning Product group. In early 2020, plaintiff followed-up with Apple recruiter both over phone and email; on February 4th 2020, the apple recruiter told the plaintiff over phone that she would like schedule an interview as soon as possible. Upon information & belief, the miscreates from defendant, Deloitte Consulting LLP, gained access to plaintiff's emails and phone conversation by illegal means, reached out the Apple recruiter and exerted their influence to stall and disrupt plaintiff's progress at the Equal Opportunity Employer Apple. Minutes after his call to Apple recruiter on February 7th 2020, plaintiff received several spam emails claiming "red onion hair oil therapy" which upon information & belief, were likely sent by a specific defendant individual with last name Rohde

26. Similarly, the defendant disrupted plaintiff's progress and his right to seek alternate employment at other firms. One incident alone can seem coincidental; however, multiple instances with similar actions and results are unlikely to be coincidental. The evidence for recruitment fraud in this case is overwhelming, the defendant has used illegal means to hack into plaintiff's communications and exerted their influence on innocent recruiters from prestigious firms to further their scheme to illegally control the Plaintiff, deny his rights and freedom to find equal opportunity employment, constrain his civil and constitutional rights,

endanger Plaintiffs life, health, wellbeing, and reputation, and harm Plaintiffs income, financial resources, and access to credit.

27. Defendant Deloitte Consulting LLP organized and orchestrated recruitment fraud against the plaintiff. The defendant human resource managers and talent relation team coordinated with recruiters and human resource managers of other firms to make sure the plaintiff could not seek alternate full-time employment. For example, in early 2019, plaintiff applied to two roles at firm MassMutual - Project Manager (Data Science and Analytics), and Director Product Management. In February 2019, MassMutual recruiter reached out to the plaintiff for the Director Product Management position. However, late February, plaintiff logged on to the MassMutual recruitment website to learn that his underlying employment applications were deleted with just the application name remaining intact. Upon information and belief, the defendant made an ongoing effort to retaliate against the plaintiff, by first invading his privacy and reading his emails through cyber-espionage, then coordinating with MassMutual team to first change the title of plaintiff's application / position from Director Product Management to Project Manager (Analytics and Data Science), then deleting plaintiff's underlying application from MassMutual system, and then sending a rejection letter to the plaintiff of not being selected.

28. Defendants conspired against the plaintiff, and/or prevented and conspired to prevent Plaintiff from seeking alternate private sector employment, while Defendants and their enterprises have benefitted economically, socially, and politically from Plaintiffs labors during his employment, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiffs income, financial resources, and access to credit.

29. Upon information & belief, Defendants engaged in illegal activities such as conspiring to, arranging, and intercepting Plaintiff's attempts to secure alternate employment by imaging his smartphone, intercepting and hacking telephone and internet communications (factual allegations are given in the paragraphs above & below) with various employers and/or recruitment agencies. These actions may in future cause the Plaintiff to be late in numerous

payments for mortgage, telephone service, internet service, and other essential services, create late payment penalties, and damaged Plaintiff's credit standing and credit availability. These actions by Defendants were part of an illegal pattern of maintaining control of the plaintiff, and violation of his civil and constitutional rights.

30. Defendants prevented and conspired to prevent Plaintiff from seeking alternate private sector employment, while Defendants and their enterprises have benefitted economically, socially, and politically from Plaintiffs labors during his employment, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiffs income, financial resources, and access to credit.

31. Defendants conspired to and engaged in employment fraud, recruitment fraud, tortious business interference and illegal activities to force Plaintiff to liquidate personal and real property, so that plaintiff could become destitute and homeless, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiff's income, financial resources, and access to credit.

## BioChemical/Medical Manipulation, Extreme Endangerment, Health Abuse and Retaliation

32. On August 1st 2019, plaintiff terminated his attorney. On August 2nd 2019, the apartment below plaintiff's home was rented. Upon information & belief, in a durable pattern of fraud to illegally control and manipulate the plaintiff, defendant rented this apartment. In due course of time, they rented another apartment. Defendant, Deloitte Consulting LLP, uses the apartment just below plaintiff's apartment to execute many of their illegal activities. This apartment is usually unoccupied, as defendant agents prefer to live on the other apartment.

33.  Starting approximately in March 2020, Plaintiff noticed sounds like ultrasonic booms from the apartment below, and noticed intense ultrasound vibrations under his home floor, chair, couch and bed shortly thereafter. On knowledge and belief, Defendants installed BioChemical/Medical manipulation devices on the walls and ceiling of the apartment below to act as an ultrasound vibration irritant to Plaintiff.

34.  Upon knowledge and belief, in a continuous pattern of harassment, personal destruction, control and subjugation, defendant has used multiple BioChemical/Medical manipulation devices to continuously harass the plaintiff. These devices include (a) remote operated ultrasound irritant equipment, (b) remote operated ray emitting gun, (c) remote operated manipulation devices placed inside plaintiff's home, and (d) hand held taser or laser weapons.

35.  Upon information and belief, these devices and ray emitting guns, including the ultrasound vibration irritant, emit light in the form of waves and particles that can easily penetrate through any material, enter the human body and cause damage. These equipment/machines were being remotely operated by the defendant from their rental apartment below, and/or by their agents on roads and driveways. As a result, plaintiff has experienced multiple symptoms including worsened allergies, heart palpitations, muscle cramping, upset stomach, chest pains, organ hyperextension and bleeding. For example, around the end of April, plaintiff experienced bleeding around his toe nails.

36.  These equipment/machines were heavily used against the plaintiff in the months of April, May and June 2020, especially when defendant was hoping for the plaintiff to collaborate with them as part of this lawsuit. First, the defendant through their illegal means sent racially obtuse messages to the plaintiff. Then the defendant sent pictures of women of varying ages, and sexually explicit messages, along with chemically induced BioChemical/Medical manipulation and asked if plaintiff would like to collaborate. When the plaintiff denied, the defendant through their illegal means over the internet asked the plaintiff to collaborate with them against other defendant employees, in-exchange for portion of money as part of final settlement. Plaintiff denied each request. Each time the plaintiff denied, the use of the above-

mentioned BioChemical/Medical devices increased. Upon patterns of behavior, information and belief, these events were being coordinated by defendant Joanna Rohde

37.  In approximately March 2020 through June 2020, Defendants undertook extremely aggressive use of both the in-floor ultrasound unit and the BioChemical/Medical Manipulation Device. These operations ran periodically throughout the day, every 24-hour period, occurring as much as 18 hours out of every day. As a result of these operations, plaintiff experienced an entire set of BioChemical/Medical symptoms that he never experienced and understood as an individual before, including exhaustion, multiple rashes, stomach pain and cramps, confusion, blood clots and heart palpitations.

38.  On aggressively extreme use of these manipulation devices, plaintiff witnessed panic attacks and depression. Periodically, defendant injected the plaintiff with surface-based chemicals, aerosols and/or food-based chemicals, that caused swelling of plaintiff's entire body, retention of stool, organ enlargement, bleeding and deep vein thrombosis. With time, other more extreme symptoms not previously known to Plaintiff were added, including symptoms of temporary paralysis including tingling on arms and legs, bursting of veins in colon, extreme muscle cramping, and the initial stages of heart attack related chest pains.

39.  On May 4th 2020, plaintiff made a call to his local law enforcement agency, West Windsor, New Jersey Police Station. Plaintiff discussed his situation on the use of ultrasonic vibration devices on the plaintiff from the apartment below. Sargent Loretucci, mocked the plaintiff for making such claims and notified the plaintiff that "No Jugde in the United States will issue a warrant to the police to search his neighbor's apartment for this situation". Upon knowledge and belief, Sargent Loretucci was contacted by defendant and/or defendant agents during plaintiff's call with the police station.

40.  Through this very intense, abusive process, Plaintiff was able to understand the apparently isolated medical issues as all or nearly all related to the same root cause, the above-mentioned BioChemical/Medical manipulation devices. As a direct consequence of Defendants illegal operation of the BioChemical/Medical Manipulation Device, Plaintiff was forced to live with a panic-stricken nervous system, proceed with his daily life with a barrage of remote

manipulated physical assaults on his body, vital organs including kidneys, heart, brain and central nervous system. This made simple tasks like driving and/or walking extremely hazardous.

41. With time plaintiff learned that since these devices emit a form of electricity, they interfere with a person's regular heart rhythm, such as the heart does not beat properly and does not carry enough oxygen to the body. This may lead to confusion, exhaustion, anger, blood clots and heart palpitations, and in extreme cases, heart attack or death. Plaintiff discovered that the only practical, non-destructive way to deal with the pain was to reduce the body exposure to the ground or the bed by sitting or standing up. Meditation and engaging in devotional activities also helped. Thus, on several occasions, plaintiff was forced to sit-up or stand for several hours in the middle of the night to prevent extreme irreversible damage to his body.

42. BioChemical/Medical abuse was used by Defendants in such a way as to emphasize certain directions for plaintiff's thinking. During this period, when Plaintiff voiced against these illegal practices of the defendants, by complaining to the local law enforcement or by shouting inside his own apartment in anger, more pain was inflicted upon the plaintiff. At other times, when the plaintiff refused to collaborate on defendant demands, more pain was inflicted to steer Plaintiff away from this direction. On knowledge and belief, defendants remotely commanded these BioChemical/Medical manipulations, and the resultant pain and other symptoms, just like a pilot would remotely command a drone, and tracked plaintiff's movement inside his house using sonar and x-ray video cameras fitted in the apartment below and outside his house. Upon patterns of behavior, information and belief, these events were being coordinated by defendant, Joanna Rohde and Austin Perez, and their agents Mr. Ron Zera, and Mr. Heather who have rented two apartments in my building (#2 and #7)

43. At other times, defendant used plaintiff's cellular phone location and plaintiff's car GPS to track his location outside his apartment. These BioChemical/Medical manipulation techniques were also used, on knowledge and belief, by other police powers and agencies not yet identified. These persons veered into the path of or bumped into Plaintiff repeatedly, while interfering with Plaintiff on sidewalks, on roads, and other public places and used

BioChemical/Medical manipulation device in an attempt to artificially induce emotional distress, or apparent erratic behavior on the Plaintiff. These activities demonstrate Defendants pattern of BioChemical/Medical manipulation, and their intent to cause or create harm to Plaintiff through tampering, retaliation, control, and violation of civil and constitutional rights in public places.

44. Defendants conspired to and engaged in BioChemical/Medical manipulations of Plaintiff to generate biochemical brain chemistry derived impulses to encourage Plaintiff to act against his own instincts, values, and reasoning, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiff's life, health, wellbeing, and reputation, and harming Plaintiff's income, financial resources, and access to credit.

45. Defendants conspired to and engaged in BioChemical/Medical manipulations of Plaintiff to disrupt normal body processes, such as heart rhythms, respiration, digestion, to induce allergy symptoms, and engaged in other interferences with normal bodily functions, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiff's income, financial resources, and access to credit.

46. Through their pattern of BioChemical/Medical manipulation and abuse, defendants conspired to and willfully harmed and endangered Plaintiff's health, quality of life, and long-term health prospects. Thus, the defendant endangered Plaintiff and other members of the public who happen to be near the plaintiff, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiffs income, financial resources, and access to credit.

### Defendant's use of False, Fraudulent and Misleading Persons and Identities for Harassment

47. Defendant has purposefully obscured the real identities of the persons, to provide a cover for agents and officers operating undercover, and for legitimate law enforcement officials to hide

their corroboration with the defendant for intelligence purposes. These persons, patterns of camouflage, and false and misleading identities have been used against the plaintiff to maintain an illegal control of the plaintiff, to conceal defendant's illegal patterns of constructive frauds, personal and intellectual property theft, violations of plaintiff's civil and constitutional rights and other wrongful acts.

48.  In addition, defendant has used and abused the power of artificial intelligence and bots to conceal the real identities of the persons, and to conduct a harassment and discrimination campaign against plaintiff by pushing illegitimate content to the plaintiff's over his phone, internet, internet television (TV) and radio. Defendant has used artificial intelligence systems to hacked into plaintiff's internet content delivery networks (CDN), learn the lip movement and voice modulation of leading personalities, and replay tailored and manipulated content over realtime to the plaintiff. Defendant has mocked the plaintiff by manipulating online and internet TV statements of leading personalities all over the world. These patterns of engagement, and harassment been used against the plaintiff to maintain an illegal control of the plaintiff, and violate his civil and constitutional rights.

**Defendant's use of Cyber Espionage and**
**Artificial Intelligence to Harass the Plaintiff**

49.  As stated earlier, defendant Deloitte Consulting LLP has placed these agents in the same apartment building as the plaintiff. This was done to achieve three objectives (a) place their BioChemical/Medical manipulation devices near the plaintiff to constantly harass him, (b) place their electronic equipment near the plaintiff to constantly monitor plaintiff's computer communications, and (c) and to constantly monitor plaintiff's phone activity. By maintaining wireless range proximity, and hacking into device operating system and hardware BIOS, defendant has continually monitored plaintiff's phone and computer activity. Defendant has thereby illegally maintained a control on Plaintiff, and has constrained his civil and constitutional rights

50. Similarly, defendant has continually monitored and listened to plaintiff's calls, and had programmed his phone in such a way that it dials directly to their programmed voice-box for certain essential services like the New Jersey Unemployment insurance etc. At other instances over the phone, defendant agents have posed as financial services / bank employees or employees supporting basic utilities like air conditioning etc. Defendant has thereby illegally maintained a control on Plaintiff, and has constrained his civil and constitutional rights

51. In addition, defendant has hacked into plaintiff's internet and his internet's content delivery network (CDN), so that he is constantly monitored and frequently provided with manipulated / tailored internet content mainly intended to mock and harass him. In early May 2020, plaintiff moved away his retail Xfinity connection to a business connection with static IP addresses to avoid the CDN hack. However, soon after installation, the defendant found a way to hack into plaintiff's new internet connection, and again started sending him sexually explicit messages and requests to collaborate. Plaintiff then disconnected his expensive business internet connection as it could not solve the issue of CDN hack. Defendant has thereby illegally maintained a control on Plaintiff, and has constrained his civil and constitutional rights, endangering Plaintiff's health and wellbeing.

52. In the month of May and June 2020, over the internet, the defendant has sent multiple racially demeaning messages to the plaintiff like "Cow Urine Therapy", and messages during the recent black lives' movement like "I can't breathe" / "SA can't breathe", thus mocking the plaintiff not only based on his race, but also on defendant's heavy use of BioChemical/Medical manipulation device against the plaintiff. These durable patterns of frauds, and harassment tactics were used to maintain an illegal control of the plaintiff, continually tamper with plaintiff's emotions, health and well-being, and violate his civil and constitutional rights.

53. In 2020, after the coronavirus shut the economy and business down, defendant increased their used of artificial intelligence and bots over the internet / internet TV to mimic lip movement and voice of leading celebrities over the world, provide fake news to the plaintiff and intentionally create panic. Defendant used such technology to mock the plaintiff and leading personalities over his internet. Instances of such fake content included fake video interviews

by famous celebrities, fake news on news media websites, changed lyrics on Youtube songs etc. Defendant has thereby illegally maintained a control on Plaintiff, and has constrained his civil and constitutional rights

54. On knowledge and belief, during this period from February to July 2020, the defendant operated BioChemical/Medical Manipulation Device, from the apartment below plaintiff's apartment, to raise fear and anxiety generating brain chemistry in conjunction with aforementioned intimidating and reckless operations of Defendants, frightening and terrifying the Plaintiff.

55. In 2019, these defendant agents threatened the plaintiff on stealing his identity. Upon information and belief, as a result of these illegal monitoring activities, defendant and its agents have all of plaintiff's personal identifiable information, including his bank accounts, social security number etc. which they may use anytime in future against him. Plaintiff is continually worried by the thought that the defendant is monitoring him, and may use of his own information against him in future. Defendant has thereby illegally maintained a control on Plaintiff, and has constrained his civil and constitutional rights

56. Previously, defendant hacked plaintiff's internet, and requested over internet chat and/or by spam mail to collaborate with them as part of this lawsuit. Similarly, defendant has hacked into plaintiff's phone communications. Defendant continuously monitored and listened to plaintiff's calls, and had programmed my phone in such a way that it dials directly to their programmed voice-box for certain essential services like the New Jersey Unemployment insurance etc. At other instances over the phone, defendant agents have posed as financial services / bank employees or employees supporting basic utilities like air conditioning etc.

57. Upon information and belief, defendant HR professionals and agents have been instituting the above-mentioned fraudulent practices including recruitment fraud to sustain an illegal control on plaintiff's health, career, finances, personal relationships, internet / phone communications, court lawsuits etc. They are using the resources provided by the defendant to illegally orchestrate nefarious harassment schemes in order to save their own jobs.

58. On June 23rd 2020, the defendant sabotaged plaintiff's IBM think pad computer, and later sent him fake emails from accounts of his own family members to mock him and to purposefully delay his work and progress on this lawsuit. Upon information & belief, this was done by Joanna Rohde, who has been actively trying to harass him for months to cover her illegal work against the plaintiff at the Deloitte Talent Relations department.

## **Abuse of Professional Services by the Defendant**

59. In end of May 2020, upon information and belief, defendant purposefully sabotaged plaintiff Home Air Conditioning System. When Plaintiff attempted to request a service for his air conditioning, he was unable to complete the very simple process. His internet search options were limited by the defendant, and on a call for service, Plaintiff was greeted by a person using heavy and unkind tone demanding hundreds of dollars for a visit. On knowledge and belief, the support call was intercepted and used by Defendants as part of an ongoing pattern of abuse of rights of Plaintiff.

60. In mid-June 2020, plaintiff requested an air-conditioning technician visiting a nearby apartment to diagnose the issue, and the technician said that the condenser unit placed outside the house was low on refrigerant. Upon information and belief, defendant sabotaged plaintiff's air conditioning unit and leaked the refrigerant from a perfectly working comparatively new unit into the environment, causing harm both to the plaintiff and the environment. Thus, the defendant maintained an illegal control of the plaintiff, purposefully engaged in overheating of plaintiff's apartment in the summer 2020, ensured he could not get proper service, sabotaged his personal property, and violated his civil and constitutional rights.

61. Similarly, in early July 2020, plaintiff tried to make an advanced estimated tax payment to the IRS using IRS direct pay. Plaintiff entered his bank information on the IRS system, and submitted the electronic payment. But two days later, plaintiff received an email from the IRS mentioning that the payment was returned. When plaintiff contacted his bank, Chase, plaintiff was first greeted by a voice prompt where he was required to enter his debit card, personnel

pin and account number, then by an unkind person who could not verify the transaction. Upon information & belief, this practice was undertaken by Defendant Deloitte Consulting LLP posing as a Chase Bank operator to steal plaintiff's personal information. This is another element of what is by now familiar illegitimate control, personal subjugation, control, and harassment of the plaintiff by Defendants.

62.   In 2020, the United States economy was impacted by the Coronavirus crisis. The government passed the CARES act which allowed state governments to extend unemployment benefits starting end of March 2020. In April and May 2020, plaintiff made several attempts to contact the New Jersey unemployment department and obtain unemployment insurance, however, and his application attempts, both over the internet and over the phone, were continually stymied by mail and by wire interference. Upon information & belief, this practice was undertaken by Defendant in an attempt to maintain illegal control over the plaintiff, and further harass him and emotionally frustrate him. This was another element of the by now familiar asset stripping, personal destruction, control, and subjugation of plaintiff by Defendants.

63.   This abuse of professional services fraud is similar to the recruitment fraud orchestrated by the defendant. Plaintiff has not been able to get in touch with real professional services personnel, just as no other job had been made available to Plaintiff. Thus, defendant has destroyed the civil rights, personal liberty and pursuit of justice of a pro-se plaintiff, endangering his life, health, personal wellbeing and reputation, and harming his income and access to credit.

**Defendant's Manipulation and Retaliation**

64.   Defendant has placed speaker system that made loud and annoying race vehicles noises day and night, in conjunction with operation of the BioChemical/Medical manipulation device and ultrasonic irritant equipment as desired, sprayed entrance of his apartment with chemicals, and arranged soft searches of the apartment as and when they pleased. Defendant has thereby illegally maintained a control on Plaintiff, and has constrained his civil and constitutional rights and endangering his health and wellbeing

65. Defendants conspired to, arranged, and intercepted Plaintiff's attempts to claim unemployment benefits due to Plaintiff in 2020 by intercepting and hacking telephone and internet communications with the State of New Jersey agency responsible for the administration and payment of state and federal unemployment benefits rightfully due Plaintiff. These actions are part of an illegal pattern of peonage, control, and violation of civil and constitutional rights by Defendants.

66. On June 2nd 2020, upon patterns of behavior, knowledge and belief, defendant with the help of their agents, cracked plaintiff's car windshield. Plaintiff found out about the crack when he reached his parking lot around 2:30 PM. Defendant later sent the plaintiff signals indicating that they were doing this to save themselves from their own retaliation against other Deloitte employees in spite of knowing that plaintiff is not interested in teaming up, for or against, any current or former Deloitte employee.

67. Also, on June 2nd 2020, upon patterns of behavior, knowledge and belief, defendant deliberately, wantonly and mercilessly coordinated with a restaurant chef to put extra large quantities of mustard in plaintiff's restaurant ordered food, when they clearly know that plaintiff is allergic to Mustard. This specific fact was stated by the plaintiff on his call to Joanna Rohde on March 6th 2018, and is also consistent with his medical history. The court must note that in this specific case, mustard is not an active ingredient of the Indian dish that was ordered (Paneer 65), as verified by the plaintiff and leading Indian food websites. Upon information, belief and pattern of behavior, these tasks were coordinated by defendant Joanna Rohde, who is as accused party on plaintiff's employment lawsuit.

68. During early May 2020, various defendant agents switched back and forth during the course of a date or weekend with plaintiff's long term companion, which included repetitions of tactics, on knowledge and belief, previously used by Defendants to maintain control, violate civil and constitutional rights, and were used as part of a coordinated effort to threaten the Plaintiff over his companion and her employment, so that he gets irritated, and he might act in an irrational way to benefit the defendants, and benefit their scheme of illegal control and manipulation. Plaintiff was also BioChemical/Medically abused by defendants several times

during this period, on knowledge and belief, to endanger Plaintiff and his companion, and in an attempt to provoke Plaintiff's anger against his companion

## **Manipulation by Defendants endangering**
## **Plaintiff and the Public in Public Places**

69. On the week of August 27th 2018, the defendant's decided not to pay any bonus to the plaintiff. Senior Manager Brian Zhong kicked-off the week with change in behavior, aggressive attitude and hostility towards the plaintiff. Other events of the week are mentioned in paragraphs 25 and 38 of the complaint. The defendant knew that the plaintiff was not being given any pay-raise, bonus or promotion, and wanted their Senior Manager to safeguard his own interests and that of the firm. As the week progressed in the state of Colorado, upon knowledge and belief, unidentified agents of defendant began to harass the plaintiff. These persons veered into the driving path of or car parking lot of the plaintiff, while interfering with Plaintiff in these public places in an attempt harass and threaten the plaintiff.

70. On one occasion, an unidentified vehicle zoomed, honked and passed the plaintiff more than once. On another occasion, the plaintiff, and an elderly person driving on the next lane had to abruptly bring their cars to a stop because an unidentified vehicle suddenly stopped in front. These harassing behaviors caused a simple trip to the office or hotel to become dangerous to Plaintiff and others, particularly the elderly.

71. Plaintiff, without giving much details, briefly mentioned about these incidents to Senior Manager Brian Zhong on plaintiff's project release on August 30th 2018. Brian Zhong admitted that he was getting pressure from a Partner and HR to release the plaintiff from his project. Upon information and belief, these activities demonstrate Defendants pattern of harassment, and their intent to cause and create harm to Plaintiff through tampering, retaliation, control, and in violation of civil and constitutional rights in public places.

72. Similarly, several times during February to July 2020, Plaintiff experienced severe emotional trauma, as Defendants raced motor vehicles at Plaintiff from various driveways along his daily

walking route multiple times during plaintiff's walk or biking activity, endangering his travel. At other times, defendants managed to abruptly change traffic lights, and unknown drivers raced through intersections.

### Tampering and Retaliation against Witness, Victim, Informant by Defendants

73. Upon information and belief, members of firm Deloitte Consulting LLP, along with their agents, have tried to conceal their presence and their activities by engaging in violations against Plaintiff, such as making threats of identity theft to the plaintiff, in part, to conceal their identity, in part to conceal causation on unlawful activities, in part, to disguise their fraudulent relations with members of government agencies such as USCIS, and in part, to abuse the constitution under color of law,  thereby scheming to illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiff's health, wellbeing, and reputation, and harming Plaintiffs income, financial resources, and access to credit. Examples of such actions are given below:

74. In September 2019, Plaintiff filed a Federal lawsuit against the Director, United States Citizenship and Immigration Services, for intentionally delaying and denying his visa application. On December 2nd 2019, Asst. US Attorney, acting on behalf of the defendant, reached out to the plaintiff by email. Immediately after defense attorney's email, unidentified agents, who upon information & belief represent firm Deloitte Consulting LLP, gained access to plaintiff's emails by illegal means and started sending SMS to the plaintiff's phone in order to bribe him to stop this lawsuit. When the plaintiff did not respond, these bribes turned into threats of identity theft. Since then, plaintiff has started receiving emails depicting bank account statements, credit card transactions, health and life insurance, with people having name similar to plaintiff.

75. On December 3rd 2019, the defense attorney formally made an appearance on the above mentioned USCIS case against the plaintiff. On December 4th 2019, on this employment discrimination case, Plaintiff filed his First Amended Complaint in Federal Court where he

identified threats of identity theft. Soon thereafter, above mentioned agents stated sending messages claiming they have influence over the USCIS defendant and Asst. US Attorney.

76. On January 7th 2020, at 11:43 AM, plaintiff emailed the Asst. US Attorney, who is a Federal Officer at the Department of Justice. Within the next few minutes above mentioned agents sent an email back to the plaintiff with heading 'David Beg'. Plaintiff reported this to the US Attorney, who mentioned that he is representing the US Federal government in this matter, and cannot represent the plaintiff. Upon information & belief, Deloitte miscreants gained access to plaintiff's emails by illegal means and mocked the plaintiff and the US Attorney.

77. On January 24th 2020, plaintiff's father emailed plaintiff's brother to send birthday withes to his 2-year daughter. Plaintiff was copied on this email. Within minutes after plaintiff received this email, miscreates read plaintiff's email using unlawful means, and started abusing the plaintiff by sending linked-in message from fake person named Fruzsina Onyedikachi implying "fuck-off" and email messages saying 'fuck-off'. Upon information, belief and patterns of behavior, employees and agents of Deloitte consulting LLP knowingly sent these insinuating emails to cause severe emotional trauma to the plaintiff thus impacting his health and well-being.

78. On January 29th 2020, plaintiff filed a police complaint in this matter. Upon information, belief and patterns, the defendant has maintained continuous surveillance of plaintiff's communications. After plaintiff's filing of the police report, defendant miscreants increased their attacks against the plaintiff.

79. On December 12th 2019, plaintiff sent a letter to the Court Judge mentioning that the plaintiff will return from his vacation on December 30th 2019. On December 30th 2019, on his way back to his home in New Jersey, plaintiff called a restaurant at Washington D.C to make an appointment for lunch. Defendant tracked plaintiff's call and location, and collaborated with Washington D.C traffic police to give the plaintiff a falsified parking ticket worth $250 while plaintiff was having his lunch. The ticket says that Plaintiff's car was wrongly parked at a

disability spot because it does not have a disability sign, whereas, plaintiff has proof that his car was parked one space behind the traffic board with disability sign.

80. Plaintiff prays every morning so that he is constantly reminded of god, and is given opportunities to seek his guidance and forgiveness. On the morning of February 4th 2020, plaintiff prayed a little longer than usual using youtube videos. The same day, plaintiff received an email from Bank of America, from a person named DivineJoy Odion. The plaintiff telephoned the local Bank of America branch to learn more about the identity of this person, named DivineJoy Odion, however, the Bank said they do not have a person working with this name. Upon information and belief, employees and agents of the defendant, who plaintiff believes have maintained constant surveillance of his devices and communications, gained access to plaintiff's phone and youtube application, invaded plaintiff's privacy and mocked the plaintiff that he "over dosed on his divine joy" on that day.

81. Defendant conspired to and engaged in an ongoing pattern of mail fraud to manipulate and sustain their control of Plaintiff's career, finances, personal relationships, political & social interactions, compliance with legal mandates, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiff's health, wellbeing, and reputation, and harming Plaintiffs income, financial resources, and access to credit.

82. Previously, upon information & belief, defendant has concealed her identity in sending fake email communications from people like Alison "Buttram" from Ernst & Young, on one part mocking the plaintiff on her success in instituting malicious sexual harassment charges against the plaintiff, and on the other part staging recruitment fraud by disguising her identity. Upon information & belief, defendant has also sent plaintiff emails to mock his disability / medical condition with emails from people like Jacquline Daniels, Ganesh Ginwali, Johanna Walkers, Jonny Wallhead etc.

83. Between August 27th and August 30th 2018, when the plaintiff got released from his Ball Corporation project, where the defendant mercilessly denied plaintiff's pay-raise, promotion and bonus, plaintiff got similar harassment emails. These emails included extremely

emotionally tormenting slogans like "take Cannibis oil for Pain Relief", "J's toe nail fungus" or "Cow Urine Therapy". Recently, in February 2020, Plaintiff again started receiving these disgusting "Cow urine therapy" emails from salesforce.com servers after he filed a police case against these Deloitte miscreants. These emails go beyond all possible bounds of decency. Upon information, belief, circumstances, timing and patterns of behavior of these emails suggest that these emails were being sent by the same individuals at defendant who were endangering plaintiff in public places (id 109-111).

84. Upon information & belief, defendant used a variety of cyber weapons and espionage techniques like phishing and hacking to gain illegal access to plaintiff's data. Defendant has used simple techniques available on 'Youtube' which help them read data from plaintiff's wireless network, to instituting more complex hacking techniques like introducing a malicious code (called exploit) on plaintiff's antivirus software like Norton or Bitdefender. These hacking and phishing attacks give the defendant in-depth insights into plaintiff's day to day online activities, including job applications, financial accounts and transactions, personal contact list, plaintiff's private email communications with other individuals etc., thereby helping the defendant in their scheme to illegally control the Plaintiff, deny his rights and freedom to find equal opportunity employment, constrain his civil and constitutional rights, endanger Plaintiffs life, health, wellbeing, and reputation, and harm Plaintiffs income, financial resources, and access to credit.

85. On October 23rd 2019, plaintiff visited the New York Supreme Court and logged into court's free-wifi server. As soon as the plaintiff logged on to the network, within a matter of seconds, plaintiff's computer was attacked by more than 300+ illegal connections. Upon information and belief, Defendants conspired to and continually tampered with and retaliated against Plaintiff, by orchestrating a sophisticated scheme of retaliation using internet phishing and cyber-espionage, carefully capturing plaintiff's email, voice communications and online internet activities mainly centered on securing alternate employment and maintaining financial independence, and Plaintiff's efforts to expose and adjudicate defendant's illegal control of Plaintiff, forced labor, trafficking, violations of civil and constitutional rights, and other illegal acts of Defendants against Plaintiff, thereby illegally constraining his civil and

constitutional rights, endangering Plaintiff's life, health, wellbeing, and reputation, and harming Plaintiff's income, financial resources, and access to credit.

86. Upon information and belief, Defendant has intentionally, knowingly, and tortiously provided legal services using attorneys actually in support of Defendant. This conflict of interest, undisclosed to Plaintiff, resulted in inherently dishonest professional services due to Defendants' illegal control of all of Plaintiff's affairs.

## Dishonest Attorney Services & Mail Fraud

87. In the state court, Plaintiff asked Mr. Vandamme, his previous attorney, to serve interrogatories to the defendant several times from May through July 2019. However, Mr. Vandamme failed to do so. On August 6th 2019, four days after dismissing Mr. Vandamme, plaintiff served interrogatories to the defendant. However, the defendant refused to respond to these interrogatories. Similarly, defense attorneys claimed that they shared 1222 pages of discovery response to the plaintiff, however, by mid-August 2019, plaintiff and his previous attorney, Mr. Vandamme, received only 278 pages of discovery responses from the defendant. Defense attorneys were not honest in their court filings or responses.

88. Defense attorneys claimed that they answered plaintiff's discovery demands by sending written discovery responses to plaintiff's attorney Mr. Vandamme on July 12th 2019, in an email with valid attachments. However, on August 2nd 2019, Mr. Vandamme claimed that he had already shared all material received from the defendant and there was no mention of the 100 pages long discovery responses. These discovery responses suddenly appeared on August 15th 2019 after the defendant filed their responses.

89. In July 2019, Plaintiff requested his then counsel, Mr. Vandamme, to file a fourth discovery demand request with a simple a simple CCTV footage request. Mr. Vandamme claimed that he sent the request to the defendant. However, after his termination, Mr. Vandamme informed the plaintiff that he timely created the discovery request, however, he failed to share it with the defendant.

90. Plaintiff has multiple date and time stamped recorded conversations from May 2019, June 2019 and July 2019 between the plaintiff and his previous counsel, Mr. Vandamme, in which Mr. Vandamme clearly states that the defense attorneys, Mrs. Brochin and Mr. Tabakman, have clearly stated to him multiple times that a defendant employee, Christina Young, is still employed with the defendant. However, in their communications with the plaintiff and the court, the defense attorneys stated that the elderly woman employee left Deloitte before plaintiff filed his case in state court.

91. Thus, defendants conspired to and continually tampered with and retaliated against Plaintiff to cover the Defendants original fraudulent and illegal acts, and/or other durable pattern of frauds including manipulating the termination date of former employees, colluding with plaintiff's previous counsel potentially before and likely after his dismissal, failing to preserve electronic evidence, falsifying information, thereby, illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiffs income, financial resources, and access to credit.

## Abuse and Deprivation of Rights Under Color of Law

92. In addition to indulging in illegal activities such as cyber-espionage and related surveillance techniques, Defendant has used multiple means of communication, including phone and/or email, through agents to threaten the plaintiff with stealing his identity, thereby scheming to illegally control the Plaintiff, constrain his civil and constitutional rights, endanger Plaintiffs life, health, wellbeing, and reputation, and harm Plaintiffs income, financial resources, and access to credit.

93. Defendant has abused their position, conspired to and used color of law to tamper with and retaliate against the Plaintiff regarding defendant efforts to disguise their fraudulent relations with Plaintiff's previous attorney and government officials in agencies like the USCIS, either directly or through intermediaries, and further encourage these agents in adverse actions against the plaintiff, thereby purposely delaying plaintiff's lawsuit in courts, and delaying

and/or wrongfully denying plaintiff's employment authorization application and right to freely work in the United States

94. Plaintiff is concerned that the highly resourceful and experienced defendant, will further use the color of law to willfully create conditions to dismiss this case, engage in adverse actions against plaintiff and further engage in a willful pattern of violations of, and failure to protect as required by law, all forms of civil and constitution rights of the plaintiff including common forms of self-determination, personal liberty, petition of government, freedom from visa based deportation or coercion, maintaining lawful presence and employment in the United States, thereby illegally controlling the plaintiff, constraining his civil and constitutional rights, endangering plaintiff's health, well-being, reputation, and harming plaintiff's income, financial resources, access to credit, employment options

95. Over the past one year, defendant has also repeatedly, by their proximity, intrusions, use of false identities, abuse, and control of the life, finances, and affairs of Plaintiff, engaged in searches without warrant, of Plaintiff's apartment. Defendant has used several agents and other resources to conduct these operations, making it literally impossible for Plaintiff to distinguish which defendant has engaged in which forms of illegal conduct against Plaintiff.

96. As such, defendants has used color of law to conspire to and engage in a willful long term pattern of violations of, and failure to protect as required by law, all forms of civil and constitutional rights of Plaintiff including common and ordinary forms of personal liberty, self-determination, freedom to seek human companions, freedom of speech, freedom of movement, petition of government, freedom from fear of severe personal injury or death, thereby illegally controlling Plaintiff, constraining his civil and constitutional rights, endangering Plaintiffs life, health, wellbeing, and reputation, and harming Plaintiff's income, financial resources, and access to credit.

**CAUSE OF ACTION**

**COUNT ONE**

28

## DEPRIVATION OF RIGHTS

97.  Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

98.  Upon information and belief, Defendant has knowingly abused his official positions, and resources for the purpose of perpetuating the abuse of Plaintiff and his civil and constitutional rights, controlling activities of Plaintiff, willfully endangering Plaintiff health, well-being, reputation, and harming his reputation, privacy, quality of life, and personal and economic prospects. Defendant actions violate 42 USC § 1983

99.  Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of defendant have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendant complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT TWO

## CONSPRIRACY TO INTERFERE WITH CIVIL RIGHTS

100. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

101. Upon information and belief, Defendant has knowingly abused his official positions, and resources for the purpose of perpetuating the abuse of Plaintiff and his civil and constitutional rights, controlling activities of Plaintiff, willfully endangering Plaintiff health, well-being, reputation, and harming his reputation, privacy, quality of life, and personal and economic prospects. Defendant actions violate 42 USC § 1985

102. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of defendant have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendant complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT THREE

### DEPRIVATION OF EMPLOYMENT RIGHTS, RECRUITMENT FRAUD AND ILLEGAL ACTIVITIES
*[in violation of Federal Common Law, Common Law Tort, New Jersey State Laws]*

103. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

104. Upon information and belief: Defendants have intentionally, knowingly, and tortiously misappropriated Plaintiff's labors, required Plaintiff to labor for their benefit and maintained illegal control of Plaintiff, and prevented Plaintiff from engaging in employment outside of Defendants' direct or indirect illegal control. Defendants' actions violate title VII of Federal Civil Rights Act and/or Americans with Disabilities Act (ADA), Federal Common Law, Federal Tort Claim Act, Common Tort Law, and/or similarly applicable law/s under NYCHRL, NYSHRL or NYC Admin Code

105. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT FOUR

### CONSPIRACY TO COMMIT CRIMES INVOLVING BODY INJURY

*[in violation of Federal Common Law, Common Law Tort, New Jersey State Laws]*

106. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

107. Upon information and belief, Defendants intentionally, knowingly, and tortiously engaged in reckless operation of motor vehicles to threaten and intimidate Plaintiff while Plaintiff was walking, or operating a motor vehicle, while Plaintiff was in public spaces. Defendants' actions violate Federal Common Law, Federal Tort Claim Act, Common Tort Law, and/or similarly applicable law/s under State Laws, N.J Revised Statues ("R.S") RS-101-1, R.S 10:1-2

108. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT FIVE

### TAMPERING AND RETALIATION AGAINST
### WITNESSES, VICTIM, INFORMANT

*[in violation of Federal Common Law, Common Law Tort, New Jersey State Laws]*

109. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

110. Upon information and belief, Defendants have intentionally, knowingly, and tortiously tampered with plaintiff in their attempts to adversely influence Plaintiffs behavior and conduct, to maintain illegal control of Plaintiff, and to intimidate Plaintiff. Defendants' actions violate Federal Common Law, Federal Tort Claim Act, Common Tort Law, and/or 18 U.S.C. § 1512, and/or similarly applicable law/s under State Laws, NYCHRL, NYSHRL or NYC Admin Code

111. Upon information and belief, Defendants have intentionally, knowingly, and tortiously retaliated against Plaintiff in their attempts to adversely influence Plaintiffs behavior and conduct, to maintain illegal control of Plaintiff, and to intimidate Plaintiff. Defendants' actions violate Federal Common Law, Federal Tort Claim Act, Common Tort Law, and/or similarly applicable law/s under State Laws, R.S. 2C:33-14 (7), R.S 10:1-2

112. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT SIX

### ILLEGAL ACTIVITIES, MAIL FRAUD,
### DISHONEST ATTORNEY SERVICES

*[in violation of Federal Common Law, Common Law Tort, New Jersey State Laws]*

113. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

114. Upon   information and belief, defendant has intentionally, knowingly, and tortiously

engaged in mail fraud to secure and perpetuate their interference with Plaintiffs rights. Defendants' actions violate Federal Common Law, and appropriate New Jersey State Laws

115. Upon   information and belief, defendant has tortiously engaged in delay of unemployment benefits due and payable to plaintiff, using mail fraud to disrupt and deny benefits to the plaintiff. Defendants' actions violate Federal Common Law Tort, 18 U.S. C. § 1343, State Laws, NYSHRL & NYCHRL.

116. Upon   information and belief, defendant has threatened the plaintiff with identity theft and wire fraud to perpetuate their interference with plaintiff's rights. Defendants' actions violate Federal Common Law Tort, 18 U.S. C. § 1343, State Laws, NYSHRL & NYCHRL.

117. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT SEVEN

### BIOCHEMICAL / MEDICALLY INDUCED BODILY DAMAGE

*[in violation of Federal Common Law, Common Law Tort, New Jersey State Laws]*

118. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

119. Defendant has intentionally, knowingly and tortuously BioChemically and Medically abused the plaintiff from February – June / July 2020. Plaintiff's health, life, reputation, ability to earn a living, personal and intellectual assets have been harmed by these actions. Defandant's actions violate Federal Common Law, Common Law Tort, New Jersey State

Laws R.S-101-1, R.S 10:1-2.

120. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

121. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT EIGHT

### RETALIATING AGAINST WITNESS, VICTIM, INFORMANT

*[in violation of Federal Common Law, Common Law Tort, New Jersey State Laws]*

122. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

123. Defendant has intentionally, knowingly and tortuously retaliated against the plaintiff in an attempt to adversely influence plaintiff's behavior and conduct, to maintain an illegal control of the plaintiff. Defendants violate Federal Common Law including Tort Law, and New Jersey State Laws.

124. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be

proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

125. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT NINE

## CONSPIRACY AGAINST RIGHTS

*[in violation of Federal Common Law, Common Law Tort, New Jersey State Laws]*

126. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

127. Upon information and belief, Defendant has knowingly, systematically and tortuously violated plaintiff's civil and constitutional rights. Defendant actions violate Federal Common Law / Common Law Tort, and/or 18 USC § 241, including New Jersey State Laws R.S 10:1-1, R.S 10:1-2

128. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated

in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT TEN

### DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

*[in violation of Federal Common Law, Common Law Tort, New Jersey State Laws]*

129. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

130. Upon information and belief, Defendant has knowingly abused their power, positions, and resources for the purpose of perpetuating the abuse of Plaintiff and his rights, controlling activities of Plaintiff, willfully endangering Plaintiff health, well-being, reputation, and harming his reputation, privacy, quality of life, and personal and economic prospects. Defendant actions violate Federal Tort Claim Act, Common Tort Law, including New Jersey State Laws R.S 10:1-1, R.S 10:1-2

131. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## COUNT ELEVEN

## OBSTRUCTION OF CORRESPONDENCE

*[in violation of Federal Common Law, Common Law Tort, New Jersey State Laws]*

132. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

133. Upon information and belief, Defendant has knowingly, systematically and tortuously violated plaintiff's civil and constitutional rights, including right to communicate, correspond or engage with US Departments and Agencies, regarding plaintiff's rights and claims for tortious engagement with agencies. Defendant actions violate Federal Common Law / Common Law Tort, and/or New Jersey State Laws

134. Plaintiff has been, and will continue to be, damaged by such actions in an amount to be proven at trial and in a manner and amount that cannot be fully measured or compensated in economic terms and for which there is no adequate remedy at law. The actions of Defendants have damaged, and will continue to damage, Plaintiff's economic situation, income, prospects of future income, civil and constitutional rights, and reputation, unless the acts of Defendants complained of herein are enjoined during the pendency of this action and thereafter.

## DEMAND FOR JURY TRIAL

135. Plaintiff demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for Judgement against defendant as follows:

136. That the defendants and their officers, employees, agents and all other persons including attorneys in active or passive concert or participation with any of them, be enjoined and

restrained during the pendency of this action and permanently thereafter from biochemical/medical manipulation of the plaintiff, and all other forms of abusive conduct or contact with the plaintiff.

137. That the defendants be directed to file with this court and serve on plaintiff, within thirty (30) days after service of an injunction a report in writing, and under oath, setting forth the detail and manner in which each defendant has complied with the injunction.

138. That the defendants be directed to file with this court and serve on plaintiff within thirty (30) days under oath, any discipline, summaries, inspections, audit reports, executive communications / memoranda related to those reports or writings prepared by defendants, agencies or other persons concerned with this matter, with any management, supervision, communication and/or disciplinary process that relate to the matters described in this complaint.

139. That the defendants be directed to file with this court and serve on plaintiff within thirty (30) days under oath, a report in writing setting forth in detail the identification or ownership, control or interest of all related persons, whether active or defunct,  including without limitations all communications and/or correspondence evidence, reports, emails, phone calls, transcripts, for those who impersonated or portrayed themselves as another during the pendency of events in this complaint, and their whereabouts; all whether or not named herein, that relate to the matters described in this complaint.

140. That the court finds that defendant, including all persons, or interest of all related persons, including cover persons and their parent enterprise(s) or controlling person(s), whether active or defunct, for the purpose of this litigation, for determining fault, liability, responsibility whether personal or financial, as defined by Federal and State laws, including all civil and criminal penalties authorized by law.

141. That the defendants be required to pay plaintiff such damages as plaintiff has sustained, or will sustain, in consequence of defendants abuse of plaintiff's economic, civil and constitutional rights, loss of professional and business income, loss of personal property or

profits owned by plaintiff and destroyed by defendants, loss of reputation and willful endangerment, but in no event less than a reasonable compensation for services and damages, accounting all gains and advantages derived by defendants that are attributable to such unlawful acts that relate to the matters described in this complaint, as defined by Federal and State laws, including all civil and criminal penalties authorized by law.

142. That the defendants be required to pay Plaintiff amount set forth by a jury and for relief requested herein, including front pay and benefits for the potential employers identified in recruitment fraud; actual and punitive damages, and costs incurred because of the Defendant's unlawful behavior, including all civil and criminal penalties authorized by law.

143. That the defendants be required to pay plaintiff such all costs related to this action, including interests, and any reasonable future attorney fees with interest if the plaintiff requires so by law, including all civil and criminal penalties authorized by law.

144. That plaintiff be granted such other and further relied upon relief as this court may deem just, proper and equitable

Yours, etc.,

**Ashu Shukla**
*_s_ashu shukla*
*Plaintiff*
202 Salem CT, Apt#11
Princeton, NJ 08540
ashu.shukla@gmail.com
T # 917-488-6143